# Richmond,

## CHESAPEAKE AND OHIO RAILWAY COMPANY V. BARGER.

November 16, 1911.

Absent, Cardwell, J.

1. VERDICTS—*Evidence to Support—Testimony of Unimpeached Witness—Rejecting Conclusions of Experts.*—A jury is not bound to accept as conclusive the testimony even of an unimpeached witness, and this is especially true of accepting the opinions of experts. The jury considers the facts upon which the opinions are based, and determines from all the evidence in the case whether the conclusions given by the witness are sound and substantial. If they disregard the conclusions of the expert, as they have the right to do, and find a verdict upon other evidence in the case, their verdict will not be disturbed.

2. PLEADING—*Allegation of Distance—Videlicet—Variance.*—A space alleged in pleading as "a great distance, to-wit: two feet" is supported by proof that the distance was between 26 and 34 inches. The office of the videlicet is to mark that the party does not undertake to prove the precise circumstances alleged. and in such case he is not required to prove them.

3. RAILROADS—*Passengers—Safe Place to Alight—Accommodations at Other Stations—Evidence.*—Where the question is as to the sufficiency of the accommodations provided by a railroad company for passengers alighting from one of its trains, it is not error to hear testimony as to accommodations furnished by the same company for like purposes at other nearby stations.

4. APPEAL AND ERROR—*Irrelevancy of Evidence—Waiver.*—A party will not be allowed, in the appellate court, to object to the irrelevancy of evidence introduced by his adversary in the trial court, where he has himself introduced similar evidence on the same point.

Error to a judgment of the Circuit Court of Botetourt county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*R. L. Parrish,* for the plaintiff in error.

*R. Haden Penn, A. P. Staples, Jr.,* and *A. B. Hunt,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action as brought by Maggie E. Barger to recover damages for injuries alleged to have been suffered by her as a result of the negligence of the defendant railway company. There was a verdict and judgment in her favor, which we are asked to review and reverse.

It appears that the plaintiff, a woman forty-four years of age, the mother of eleven children, nine of whom were living, most of them being solely dependent upon her for their care and attention, left her home in Botetourt county with her youngest child to go to her daughter who was ill and needed her attention. She bought a ticket at Buchanan for Haden, a station about thirty-five miles distant, where her daughter lived, and became a passenger on one of the regular trains of the defendant company. The evidence tends to show that at Haden station no platform or other convenience was provided for passengers entering or leaving the train, and that on her arrival there, in order to alight, she had to step down from the lower car step, a distance of some 26 to 34 inches to the ground; the place where she alighted being between the main track and the side track, with the ground at that point forming a rough depression and in bad condition. At the time the plaintiff was about four months in pregnancy, and was carrying her baby, about three years of age, on her left arm. The only assistance rendered her was the taking of her hand by the brakeman, which she says was worse than no assistance. When she stepped down, her foot slipped in a hole, turning her ankle, which together with the high step caused a severe

wrench of her back. She complained at the time to the conductor of the high step she had been compelled to take, and told those who met her at the station of the pain she was suffering as the result of the step. The evidence further tends to show that the plaintiff suffered continually from the time she took the step until the next afternoon, when she had several hemorrhages which continued until the following morning when she had a miscarriage. Since then she has suffered greatly and been unable to discharge her usual duties, her physician attributing her condition to the injury she received in alighting from the train, which he says resulted in displacing the womb and other organs, from which no relief can be had except possibly by an operation.

The first assignment of error is to the action of the court in refusing to set aside the verdict as contrary to the evidence. The chief contention in support of this assignment is that Dr. Givens, a witness introduced on behalf of the defendant company, who saw the *foetus* after it was delivered, testified as an expert and expressed the opinion that the *foetus* had been dead for a week before it was delivered; that Dr. Givens being the only expert who saw the *foetus* and knew the facts to be derived from its inspection, his evidence could not be disregarded by the jury but must be accepted by them as showing conclusively that the miscarriage was not the result of alighting from the train, but that it resulted from causes existing before the plaintiff left her home.

This position cannot be sustained. No one can read the testimony of this witness without seeing that the jury might well have regarded Dr. Givens as a prejudiced and biased witness. In addition, his view is in direct conflict with other expert testimony and circumstances adduced by the plaintiff. Whether or not the miscarriage resulted from the injury sustained in alighting from the train was a ques-

tion for the jury, to be determined upon due consideration of all the evidence bearing upon the issue. The testimony of the plaintiff is that she felt "completely torn to pieces" by the step from the train, especially through her side and the right side of her back, and that it was with great difficulty that she walked one hundred yards to her daughter's house; and that she continued to suffer until the miscarriage occurred. She stated that she had been in her usual good health up to the accident, had borne eleven children and had never been threatened with an abortion; but that on the day after she stepped from the train, she knew from her suffering and general physical condition that an abortion was threatened. Dr. Godwin, an expert witness for the defendant, says that a woman can almost always tell anything unusual when she is pregnant; that if the *foetus* is dead she can very often tell by her feelings. Dr. Dodd, the attending physician of the plaintiff, testifies that the abortion occurring thirty-six hours after an injury of the kind received by the plaintiff is the natural and probable result of such injury; that from the displaced condition of the *uterus*, as disclosed by his examination, in the absence of any other physical disturbance, he would attribute the abortion and subsequent illness to the step from the train. This witness further says that from his examination of the plaintiff he found nothing to suggest that the womb had been in any way infected by carrying a dead *foetus*.

It is not necessary to recite other testimony and other circumstances furnished by the record in support of the plaintiff's view that the abortion resulted from the injury sustained by her in alighting from the train. We have said enough to show that the evidence on that issue was conflicting. The question was submitted to the jury by the defendant's instruction No. 4, which told them that if they believed the *foetus* to have been dead for two days or more prior to the happening of the abortion, they must

find for the defendant. The verdict shows that the jury disregarded, as they had the right to do, the expert opinion of Dr. Givens, and rested their finding upon the other evidence tending to sustain the plaintiff's theory. A jury is not bound to accept as conclusive the testimony even of an unimpeached witness.

In *Clopton's case*, 109 Va. 813, 63 S. E. 1022, this court, quoting from high authority, says: "The mere assertion of any witness does not of itself need to be believed, even though he is unimpeached in any manner, because to require such belief would be to give a quantitative and impersonal measure to testimony. . . . . The jury have the power to refuse their credit to parol testimony, and no action of the court should control the exercise of their admitted right to weigh its credibility."

Especially is it true that a jury is not generally bound to accept the opinion of expert witnesses as conclusive. It considers the facts upon which the opinions are based and determines from all the evidence in the case whether the conclusions given by the witness are sound and substantial. Moore on Facts, Vol. 1, secs. 105, 107.

It is further assigned as error, that the court erred in refusing to strike out all evidence tending to show that the distance from the bottom of the step of the coach to the ground was more than two feet. The declaration alleges that the plaintiff "was compelled to step down from the car a great distance to the ground, to wit: two feet."

The plaintiff's evidence shows that the distance was between 26 and 34 inches, and it is contended that this constitutes such a difference between the allegation and the proof as requires the court to strike out the evidence on the ground of variance.

This position is without merit. The videlicet, namely, "a great distance, to-wit: two feet," employed in the declaration is intended to avoid a positive averment which must be strictly proved.

"The office of the videlicet is to mark that the party does not undertake to prove the precise circumstances alleged; and in such cases he is not required to prove them." Bouv. L. Dict., Vol 2, p. 786.

It is further assigned as error that the court permitted the plaintiff to be questioned as to the kind of landings the defendant had at other stations than the Haden station.

These questions were confined to a comparison with two stations on the same line and a short distance from Haden station. The evidence tended to show how the accommodations at Haden compared, as to safety, with other stations of the defendant which the witness had observed, and thereby to show the lack of care observed by the company in furnishing reasonably safe accommodations for passengers at Haden. If, however, the few questions asked along this line had been irrelevant, the defendant could not complain, as it introduced like evidence with respect to other stations.

There was no reversible error in the matter of giving and refusing instructions. The alleged negligence of the defendant in not providing a reasonably safe and convenient means of alighting from its train, and in not rendering the plaintiff reasonable assistance when alighting, as well as all other questions of fact arising in the case, were submitted to the determination of the jury under instructions which were free from prejudice to the rights of the defendant. The verdict of the jury was sustained by the evidence, and, therefore, cannot be disturbed.

The judgment complained of must be affirmed.

*Affirmed.*