[Crim. No. 1070.   Third Appellate District.—February 25, 1929.]

THE PEOPLE, Respondent, v. FRED MILLER, Appellant.

Clifford A. Russell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The appellant was convicted of the unlawful possession of intoxicating liquor. He was also charged with the prior conviction of a similar offense, to which he entered a plea of guilty.

It is now contended that the evidence fails to support the verdict, chiefly because it does not affirmatively appear that the liquor was not kept by the defendant for domestic use in a private dwelling-house. The appellant also complains of certain instructions and oral remarks made by the trial judge.

August 24, 1928, two officers visited the residence of the defendant at Knights Landing. One went to the front door and the other approached the rear door. The officer Litsch testified: "I ran to the back door. . . . As I came up on the porch, . . . Mr. Miller ran to the sink with two bottles and threw them down into the sink and broke them. I went in, . . . and the liquor was in the sink running down. . . . It was brown, . . . about the color of ordinary jackass (brandy); . . . there was the odor of jackass and gin. It smelled very strong of gin and very strong of jackass brandy. . . . As I came in the door, . . . Mr. Miller stepped back from the sink and said 'I beat you to it that time,' and laughed. . . . Q. Would you say it was fit for beverage purposes before it got into the trap? A. Yes, oh sure, . . . that was fit for beverage purposes. . . . Up in the cupboard were a lot of whisky glasses." The gooseneck drain from the sink to the sewer was immediately removed by the officer and its contents were analyzed by a chemist and found to contain 11.46 per cent of alcohol by volume. The presence of water in the gooseneck would account for a lower

percentage of alcohol than would normally be found in jackass brandy.

The evidence sufficiently shows that the defendant had in his possession at his residence jackass brandy which was kept for illegal purposes. The character of the liquor was identified by an analysis and from its odor. The presence of the glasses and the effort to destroy the evidence of the liquor tend strongly to show that it was kept for beverage purposes. (*People* v. *Erbel*, 72 Cal. App. 543 [237 Pac. 769].) ■ The court will take judicial notice of the fact that jackass brandy is an intoxicating liquor ordinarily used for beverage purposes. (*People* v. *Silva*, 67 Cal. App. 351, 357 [227 Pac. 976].) ■ While it is true that the burden rests upon the prosecution to prove the illegality of the possession of intoxicating liquor (*People* v. *Buttulia*, 70 Cal. App. 444 [233 Pac. 401]), and the fact that it was found in a private dwelling-house is a circumstance to be weighed in favor of the theory of lawful possession of the liquor, the question as to whether it was lawfully or unlawfully possessed by the defendant, was a matter for the jury to determine from all the facts and circumstances of the case. (*People* v. *Mullaly*, 77 Cal. App. 60, 65 [245 Pac. 811].) The sudden breaking of the bottles and the dumping of the jackass brandy into the sink, at the approach of the officers, and the statement that "I beat you to it that time," together with the request made of the officer by the defendant at the time of his arrest, as follows: "Why don't you give a man a break," as well as the presence of whisky glasses and slot-machines in the house, strongly indicate guilty knowledge of the defendant and meet the required burden on the part of the prosecution of proving the unlawful possession of the liquor.

■ The appellant claims that the trial court failed to comply with the provisions of section 1127 of the Penal Code, in that instruction number 12 does not appear to have been signed by the judge, and for the reason that certain oral comments which were made by the judge in the course of his charge to the jury amounted to the giving of unwritten instructions without the consent of counsel.

The transcript of proceedings on appeal, however, clearly shows that instruction number 12 was given immediately preceding instruction number 13, which was signed and

indorsed by the judge as "given." The record shows that immediately after the statement that: "The Court will now instruct the jury," thirteen instructions follow in consecutive order. Instructions numbered 12 and 13 each relates to the same subject matter. They both refer to the necessity of proving that the intoxicating liquor must have been fit for beverage purposes. Except for the colloquy which intervened between the court and counsel respecting the application of this instruction number 12, they were given in the following connected form as one charge, to wit: "You are instructed that unless the prosecution proves that the liquor introduced in evidence was fit for beverage purposes at the time it was in the possession of the defendant, you must acquit the defendant."

"You are instructed that in such a case as this, it is not necessary and incumbent upon the prosecution to prove that the liquor introduced in evidence is fit for beverage purposes. Given. W. A. Anderson, Judge."

The foregoing instructions are in the precise language certified to and must be deemed to have been given as certified. Although the first of these separately numbered instructions fails to show the signature of the judge, the fact that they relate to the same subject matter and that they were read together justifies the conclusion that they constituted but a single charge. This sufficiently complies with the requirements of section 1127 of the Penal Code, which provides that, "Upon each *charge* presented and given or refused, the court must endorse and sign its decision. . . . "

Instruction number 13 is a correct statement of the law for the reason that it refers specifically to the liquor which was "introduced in evidence." It is apparent that the particular liquor which was introduced in evidence need not then necessarily be fit for beverage purposes. It had undergone a substantial change since it was first found in the possession of the defendant. It is necessary for the prosecution to prove that the liquor with which the defendant is charged with being illegally possessed was ordinarily fit for beverage purposes. But that liquor had been dumped into a sink and mingled with grease and soapy water in the gooseneck of the drain. It was the contaminated contents of this drain-pipe which was offered in evidence. The dumping of this liquor by the defendant was for the evident

purpose of destroying its identity as an illegal beverage. It would be absurd to say that the liquor must still be fit for beverage purposes after the wilful attempt to destroy the evidence of its character by mingling it with other deleterious substance. It was, therefore, unnecessary for the prosecution to prove that the liquor was fit for beverage purposes at the time it was offered in evidence.

█ It is claimed that the colloquy between the court and counsel respecting the application of instruction number 12 constituted oral instructions which were, therefore, erroneously given. A fair reading of the record leads to the conclusion that this discussion was not intended by the court as a part of his charge. It was not directed to the jury, but was solely in response to counsel's criticism of the instruction number 12. A mere colloquy between counsel and the court intended only as an explanation for the giving of certain instructions does not constitute a part of the charge which, under the provisions of section 1127 of the Penal Code is required to be reduced to writing and signed by the judge. (*People* v. *Ruef,* 14 Cal. App. 576 [114 Pac. 48, 54].) █ Finally it is contended that the court erred in failing to instruct the jury pursuant to the provisions of the Volstead Act (27 U. S. C. A., sec. 1 et seq.) that it is lawful to possess intoxicating liquor in one's private dwelling-house when it is kept only for the use of the family or guests. But no such instruction was offered. The jury was fully and properly charged as to the burden of proof. The latter portion of instruction number 9 informed the jury that, " . . . proof of the *unlawful possession* (of the liquor) beyond a reasonable doubt is the gist of the charge contained in the information." A defendant may not complain of a failure to give instructions upon particular features of an offense, which he relies upon as a defense, in the absence of a specific request for such instructions. (8 Cal. Jur. 309, sec. 362; *People* v. *Matthew,* 194 Cal. 273, 283 [228 Pac. 424].) Even though it be conceded that the jury might well have been more fully and specifically instructed as to certain elements of the particular offense, the record discloses the inevitable conclusion that a miscarriage of justice has not resulted.

The judgment and the order are affirmed.

Plummer, J., and Finch, P. J., concurred.